**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**CIVIL NO. ________________**

**KIARA CURTIS, ELLIS SHIPMAN, and HEATHER WILSON, On Behalf of Themselves and All Others Similarly Situated,**

**Plaintiffs,**

**V.**

**THE KROGER CO.,**

**Defendant.**

---

**PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND**

---

1. This case challenges Defendant The Kroger Co.'s ("Kroger") long standing policy of failing to properly compensate its non-exempt employees for all hours that they worked. Specifically, Kroger instituted a policy of requiring its employees to wait in line and pass a security screening before clocking-in for the day. Similarly, Kroger instituted a policy of requiring its employees to wait in line and pass a security screening after clocking-out for the day. Further, Kroger instituted a policy of failing to pay for time spent working during meal periods. Indeed, Kroger deducted time for a meal break even when no meal break was taken by Plaintiffs. Kroger also violated Colorado law in failing to provide a 10 minute paid rest break for each four hours worked.

2. Plaintiffs worked for Kroger in Colorado and bring their claims under the Colorado Wage Claim Act, *see* Colo. Rev. Stat. § 8-4-101, *et seq.* and the Colorado Overtime and Minimum Pay Standards Orders #38 and #39, 7 C.C.R. 1103-1 as a Rule 23 Class Action to remedy the illegal pay practices and policies identified in this Complaint.

3. Kroger's conduct violates Colorado law because Kroger failed to pay Plaintiffs their minimum wage and overtime compensation for all time worked as required by the Colorado Constitution art. XVIII, § 15, the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #38, #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law").

4. Specifically, Colorado Wage-and-Hour Law requires employers to pay employees their agreed wage rates – their minimum or overtime wage rates – for all time worked. *See* COMPS Order, Rules 3, 4.

5. Under Colorado Wage-and-Hour Law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

6. "Time Worked" includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to, if such tasks take over one minute, putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, **security or safety screening**, remaining at the place of employment awaiting a decision on job assignment or

when to begin work, performing clean-up or other duties "off the clock," clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated." *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).

7. Here, Kroger failed to pay for the time spent by Plaintiffs and the Class Members completing security screenings before the start of their shifts and after the end of their shifts.

8. Further, under Colorado Wage-and-Hour Law, employers must provide all employees with an "uninterrupted, duty-free meal periods of at least 30 minutes." Interpretative Notice & Formal Opinion #4. COMPS Order 5.1 requires as follows:

> Meal Periods. Employees shall be entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours. Such meal periods, to the extent practical, shall be at least one hour after the start, and one hour before the end of the shift. Employees must be completely relieved of all duties and permitted to pursue personal activities for a period to qualify as non-work, uncompensated time. When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.

9. For meal periods to be unpaid, non-work time, employees must be completely relieved of all duties, allowed to leave the work site, and allowed to do personal activities for 30 minutes. *Id*. Kroger failed to comply with this law.

10. Moreover, under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

11. COMPS Order 5.2.4 requires:

> When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed,

> work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

12. Kroger failed to comply with this law.

13. Consequently, Plaintiffs bring this lawsuit as a class action under Federal Rule of Civil Procedure 23 to recover unpaid minimum wages, unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), and attorneys' fees and costs due to them and the similarly situated workers. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110, 8-6-118.

## JURISDICTION AND VENUE

14. This Court also has original jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the class members are citizens of a state different than that of Kroger.

15. This Court has personal jurisdiction over Kroger because it has purposefully availed itself of the privileges of conducting activities in the state of Colorado and established minimum contacts sufficient to confer jurisdiction. Kroger does business in Colorado, advertises in Colorado, employs workers in Colorado, and the violations of the law forming the basis of this lawsuit occurred in Colorado. Therefore, the assumption of jurisdiction over Kroger will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Moreover, Plaintiffs worked for Kroger in Colorado and were denied wages in Colorado. Therefore, there is specific jurisdiction over Kroger in Colorado.

16. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims in this Complaint took place in this district. In particular, Plaintiffs worked in this district and the violation of the law forming the basis of this lawsuit occurred in this district.

## PARTIES TO THIS ACTION

17. Plaintiff Kiara Curtis is an individual residing in Colorado.

18. Plaintiff Ellis Shipman is an individual residing in Colorado.

19. Plaintiff Heather Wilson is an individual residing in Colorado.

20. The “Screening Class Members” are all current and former employees of Kroger who completed a security screening in Colorado at any time during the three year period before the filing of this Complaint to the present.

21. The “Delivery Driver Class Members” are current and former fresh delivery drivers employed by Kroger in Colorado at any time during the three year period before the filing of this Complaint to the present.

22. Defendant The Kroger Co. is a foreign corporation with its principal place of business in Cincinnati, OH. Defendant can be served with process by serving its registered agent, Corporation Service Company, at 1900 W. Littleton Blvd., Littleton, CO 80120.

## COVERAGE

23. At all material times, Kroger has been governed by and subject to Colorado Wage-and-Hour Law.

24. Indeed, at all material times, Kroger has been an employer within the meaning of CO. REV. STAT. § 8-4-101(6), Colorado Constitution art. XVIII, § 15, the Colorado Minimum

Wage Act, C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Orders #38 & #39, 7 C.C.R. 1103-1, Rule 1.6.

25. At all material times, Plaintiffs and the Class Members have been employees of Kroger within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

26. At all material times, Kroger was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and the Class Members.

## FACTS

27. Kroger is a large retail corporation that operates supermarkets and department stores that sells groceries and products to customers.

28. To provide these services, Kroger operates distribution centers and fulfilment centers in Colorado.

29. At these distribution and fulfillment centers, Kroger employs hundreds of hourly paid workers in Colorado.

### A. Plaintiffs' employment with Kroger.

30. Plaintiff Curtis worked for Kroger in Auroa, Colorado. She worked for Kroger in a distribution center from approximately February 2026 to May 2026. She was employed as a delivery driver. Her job duties involved gathering Kroger grocery items and delivering those items to residents in Colorado. She worked a schedule that was from 4pm to 11pm and worked normally five to six days each week. She was paid by the hour by Kroger and her hourly rate was approximately $24.30 per hour. Plaintiff Curtis worked overtime in one or more weeks for Kroger.

31. Plaintiff Shipman worked for Kroger in Auroa, Colorado. He worked for Kroger in a distribution center from approximately February 2026 to May 2026. He was employed as a delivery driver. His job duties involved gathering Kroger grocery items and delivering those items to residents in Colorado. He worked a schedule that was from 4 am to 1 pm and normally worked four days each week. He was paid by the hour by Kroger and his hourly rate was approximately $24.50 per hour. Plaintiff Shipman worked overtime in one or more weeks for Kroger.

32. Plaintiff Wilson worked for Kroger in Denver, Colorado. She worked in a fulfillment center as a fulfillment center associate. She worked for Kroger from June 2023 to January 2024. Her job duties included standing at a conveyor belt and gathering items. She then scanned the items and placed them in bags to be delivered to customers. Her work schedule was normally Sunday through Thursday from 7 am to 3:30 pm. She was paid by the hour by Kroger and her hourly rate was approximately $19 per hour. Plaintiff Wilson worked overtime in one or more weeks for Kroger.

**B. Kroger failed to pay for all "time worked" as required by Colorado Wage-and-Hour Law.**

33. Under Colorado Wage-and-Hour Law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

34. This includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to…putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, **security or safety screening**, remaining at the place of employment

awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated." *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).

35. As hourly, non-exempt employees, Plaintiffs and the Screening Class Members were required to clock-in and clock-out each day.

36. Unfortunately, Kroger maintained a policy and practice of failing to pay its employees, including Plaintiffs and the Screening Class Members, for all hours worked. That is because Kroger required its hourly paid employees to complete security screenings off the clock and without pay.

37. Kroger required its employees to arrive at Kroger warehouses prior to the start of their scheduled shifts. However, when employees arrived before the start of their scheduled shifts, they were not allowed to clock-in for the day. That is because Kroger required employees to undergo a mandatory security screening prior to clocking in each day.

38. Although the security screening was required by Kroger, Kroger did not pay any employee, including Plaintiffs and the Screening Class Members, for the time spent undergoing the security screening. As a result, Kroger did not pay Plaintiffs and the Screening Class Members for all "time worked."

39. In particular, prior to the start of their scheduled shifts, Kroger employees were required to report to a security screening station. After entering the security screening station, employees entered a line and were called one-by-one to a checkpoint where the security screening took place. During the security screening, Kroger employees were required to submit any bags in

their possession to be searched, remove any metal objects, and walk through a metal detector. If the metal detector's alarm sounded, the employees were required to undergo a secondary security screening by the security guard located at the screening station. During the secondary security screening, the Kroger employee was subject to a personal search with a handheld wand to detect and identify any unauthorized items in the possession of the Kroger employee. If the employee passed the screening, the employee was then allowed to walk from the security screening station to the time clock to clock-in for the day.

40. The amount of time it takes to wait in line and undergo the security screening is approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Kroger employees in line for the security screening. The security screenings occurred each day at each Kroger warehouse in Colorado and no Kroger employee was permitted to work without first passing the security screening.

41. In fact, given that long lines could form, Kroger employees needed to show up well before the start of their shifts to have enough time to wait in line and complete the screening and then clock-in by the start of their scheduled shifts. The Plaintiffs and Screening Class Members arrived at the Kroger warehouses at times 15-30 minutes before the start of their shifts so that they could have enough time to complete the mandatory on-site screening and then clock-in by the start of their scheduled shifts.

42. Similarly, at the end of their shifts, Kroger employees were required to clock-out. They were then required to walk to the screening station and pass an exit screening before leaving the facility. The exit screening is the same as the pre-shift security screening process, just performed after the Kroger employees clock out.

43. The amount of time it takes to wait in line and undergo the security screening at the end of the shift is approximately 10 minutes to 15 minutes on average. However, this amount of time could be longer depending upon the number of other Kroger employees in line. This exit security screening occurs each day at each Kroger warehouse in Colorado.

44. Moreover, Plaintiffs Curtis and Shipman worked as delivery drivers for Kroger. After completing the screening, Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members were required to gather dispatch equipment and the license plate for the truck they were assigned from the dispatch office prior to clocking-in. This time was not paid by Kroger.

45. Similarly, after clocking out but before going to the exit screening, Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members were required to report to the dispatch office to return their equipment. After returning their equipment, they were required to report to the screening station to wait in line and complete the security screening before leaving. The time it took to report to report to the dispatch office and gather/return the necessary equipment was approximately 3 to 5 minutes.

**C. Kroger's mandatory security screenings are compensable under Colorado Wage-and-Hour Law. Kroger is liable for failing to pay for this time.**

46. The pre-shift and post-shift security screenings should have been paid by Kroger because this work is compensable under Colorado Wage-and-Hour Law. *See* C.C.R. § 1103-1(1.9.1), COMPS Order #39 (1.9.1).

47. Time spent completing security screenings is expressly considered time that must be paid by an employer under Colorado Wage-and-Hour Law. *See id*. Further, Colorado INFO #1 states as follows:

- “Time worked” that must be paid is all time performing labor or services for employer benefit, including:
  - time employees are suffered or permitted to work, whether or not required; and
  - time employers permit or require employees to be on-premises, on duty, or at a prescribed workplace, but not just letting off-duty employees arrive or remain on-site.
- Examples:
  - cleanup or setup (examples: putting on or removing clothes, or gear, worn only at work);
  - **checking in/out (timeclock, <u>security/safety screening</u>, etc.), or <u>waiting to do so</u>;**

INFO #1 (emphasis added).

48. Colorado never adopted the federal Portal-to-Portal Act and therefore, pre-shift and post-shift activities that are required by an employer are not excluded from compensation, but instead count as time worked that must be paid. *See* INFO #20A. That means that time spent completing security screenings and the time spent waiting for the security screenings is compensable under Colorado Wage-and-Hour Law.

49. Moreover, the security screenings are compensable because the security screenings were required by Kroger and were not optional. The Plaintiffs and the Screening Class Members were required to comply with Kroger’s instructions and were required to complete both the

entrance and exit security screenings each shift under the threat of discipline, including possible termination.

50. These security screenings were also undertaken on Kroger's premises, and the Plaintiffs and the Screening Class Members were confined to Kroger's premises while they waited for the security screenings and during the security screenings.

51. The security screenings were also controlled by Kroger. Indeed, the Plaintiffs and the Screening Class Members were required to follow Kroger's instructions while they waited for the security screenings and during the security screenings.

52. During the security screenings, Kroger compelled Plaintiffs and the Screening Class Members to perform specific tasks, such as lining up, walking through the metal detectors, submitting to a wand search, and removing any personal items that contain metal to be searched.

53. During the screening, Kroger directed, commanded, and restrained its employees; prevented them from using that time effectively for their own purposes; and Plaintiffs and the Screening Class Members remained subject to Kroger's control during the security screenings.

54. The security screenings were undertaken primarily for the benefit of Kroger. The Plaintiffs and Screening Class Members derived zero benefit from being forced to undergo the security screenings prior to the start of their scheduled shifts and after the end of their scheduled shifts without pay.

55. As a result of Kroger's conduct, Plaintiffs and the Screening Class Members are owed significant unpaid wages and penalties.

**D. The time spent walking to and from the security screenings and the time spent at the dispatch office is compensable under Colorado Wage-and-Hour Law.**

56. All time spent after completing the security screening to the time of clock-in is compensable under Colorado Wage-and-Hour Law. Similarly, all time spent after clocking out to the time of completion of the exit screening is compensable under Colorado Wage-and-Hour Law.

57. Such time was required by Kroger and was conducted on the premises of Kroger. Further, such time was conducted for the benefit of Kroger because without this time, Plaintiffs and the Screening Class Members could not perform their work for Kroger.

58. Also, INFO 20#A provides that Colorado has adopted the "continuous workday" rule. The time spent walking to and from the security screenings is compensable the "continuous workday" rule.

59. Under the continuous workday rule, once the first compensable activity is performed, all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*. Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

60. Therefore, the Plaintiffs and Screening Class Members are entitled to compensation from the time they first arrived at the screening station in the morning to the time they clocked-in

for the day. Similarly, the Plaintiffs and Screening Class Members are entitled to compensation from the time they clocked-out at the end of the day to the time they completed the exit screening.

61. Plaintiffs and the Screening Class Members were non-exempt employees.

62. Plaintiffs and the Screening Class Members were paid on an hourly rate basis.

63. When they worked more than 12 hours in a day or forty hours in a workweek, they were entitled to overtime pay.

64. Due to the substantial pre-shift work and post-shift work, Plaintiffs and the Screening Class Members were not paid for all time worked each day and are owed significant unpaid wages.

65. Although Kroger employs electronic clocking-in technology, this technology was not accessible to Plaintiffs and Screening Class Members before the pre-shift screenings or after the post-shift screening.

66. Kroger's method of paying Plaintiffs and Screening Class Members in violation of Colorado Wage-and-Hour Law was not based on a good faith and reasonable belief that their conduct complied with the law. Kroger knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

**E. Kroger did not provide required rest breaks.**

67. Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

68. Thus,

> When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without

> compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

COMPS Order, Rule 5.2.4.

69. Kroger failed to authorize and permit Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members to take a 10-minute rest period for each 4 hours they worked for Kroger.

70. Further, Kroger did not compensate Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members for failing to authorize, permit, and/or provide a 10 minute rest period for every 4 hours of work.

71. Instead, Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members regularly worked long hours, well over 4 hours, without any breaks in violation of Colorado Wage-and-Hour Law.

72. As a result, Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members were not paid for all of their earned minimum wages, regular wages, and overtime wages. They were not paid 10 minutes of wages for each rest break that they were not provided or authorized to take.

73. Further, Interpretative Notice & Formal Opinion #4 states as follows:

> Time-and-a-half overtime pay is required for work past 40 hours in a week or 12 in a day (except for overtime-exempt employees ), and "required rest periods are time worked for the purposes of calculating ... overtime." That means pay for missed rest periods must be at time-and-a-half overtime rates for any missed rest periods during overtime hours — the hours past 40 in a week, or 12 in a day.

74. In other words, when overtime hours were worked, Kroger was required to pay overtime wages on the time for the rest breaks that were not provided.

75. Thus, payments for missed rest breaks must be paid at the overtime rate when there was work past 40 hours in a week or 12 hours in a day. Accordingly, Kroger failed to pay all overtime wages due to the Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members.

**F. Kroger failed to pay for meal periods.**

76. Kroger implemented a payroll policy whereby Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members did not clock out or back in for their meal breaks. Instead, Kroger deducted 30 minutes per shift worked for a so-called meal break for Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members.

77. Kroger instructed its delivery drivers to clock in at the beginning of their shifts and clock out at the end of their shifts; however, these employees were not to clock out at the beginning of their meal period or clock back in at the end of their meal period. Instead, under Kroger's payroll policy, there was a deduction of 30 minutes per shift worked. In other words, if a worker did not take meal period, 30 minutes were deducted. If a meal period was taken that was less than 30 minutes, 30 minutes of time was still deducted. Defendant's policy violates Colorado Wage-and-Hour law.

78. Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members were not provided a duty-free meal period of 30 minutes. Instead, while they were driving and delivering the grocery items, there was not enough time to stop for 30 minutes and take a meal break. Indeed, there were days when they never took a meal break at all, let alone a full 30 minute meal break.

They were normally interrupted and were required to perform work during their meal periods. Kroger still deducted time for the meal period.

79. Kroger's conduct violates Colorado law. Under Colorado Wage-and-Hour Law, employers must provide all employees with an "uninterrupted, duty-free meal periods of at least 30 minutes." Interpretative Notice & Formal Opinion #4. COMPS Order 5.1 requires as follows:

> Meal Periods. Employees shall be entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours. Such meal periods, to the extent practical, shall be at least one hour after the start, and one hour before the end of the shift. Employees must be completely relieved of all duties and permitted to pursue personal activities for a period to qualify as non-work, uncompensated time. When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.

80. For meal periods to be unpaid, non-work time, employees must be completely relieved of all duties and allowed to do personal activities for 30 minutes. *Id.* Kroger failed to comply with this law as the Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members were not completely relieved of all duties and/or were not allowed to engage in personal activities for 30 consecutive minutes. As a result, Kroger owes unpaid wages to Plaintiff Curtis, Plaintiff Shipman and the Delivery Driver Class Members.

## RULE 23 CLASS ACTION ALLEGATIONS

81. Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

82. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of the following classes:

**Screening Class: All current and former employees of Kroger who completed a security screening in Colorado at any time during the three year period before the filing of this Complaint to the present.**

**Deliver Driver Class: All current and former fresh delivery drivers employed by Kroger in Colorado at any time during the three year period before the filing of this Complaint to the present.**

83. Although Plaintiffs do not know the precise number of members of the proposed classes, Plaintiffs believe there are more than 40 individuals that fit into the classes, and likely more than 1,000 members.

84. The members of the classes are so numerous that their individual joinder is impractical.

85. The identity of the members of the classes is readily discernible from Kroger's records.

86. Plaintiffs and the proposed classes on one hand, and Kroger on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.

87. Common questions of law and fact exist to all members of the classes. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

a. Whether Plaintiffs and the Class Members performed compensable work without pay;

b. Whether the time spent completing security screenings is compensable under Colorado Wage-and-Hour Law;

c. Whether Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members were provided 30 minute duty free meal periods;

d. Whether Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members were provided 10 minute rest breaks for every four hours worked;

e. Whether Plaintiffs and the Class Members worked hours in excess of forty hours per work week; and

f. Whether Plaintiffs and the Class Members were denied overtime pay at a rate not less than one and one half times their regular rate under Colorado Wage-and-Hour Law.

88. These and other common questions of law and fact, which are common to the members of the classes, predominate over any individual questions affecting only individual members of the class.

89. Plaintiffs' claims are typical of the claims of the classes because Plaintiffs were not paid wages in accordance with Colorado Wage-and-Hour Law just like the Class Members.

90. Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the class that they seek to represent. Plaintiffs have retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the classes will be fairly and adequately protected by Plaintiffs and their counsel.

91. A class action is far superior to other available means for the fair and efficient adjudication of the state law claims of Plaintiffs and the Class Members. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Kroger's conduct. It would be virtually impossible for members of the classes to individually seek to redress the wrongs done to them. Even if the members of the classes could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory

judgments. Individualized litigation increases the delay and expense to all parties and to the court system. Indeed, this case raises complex, legal and factual issues which are better resolved in one proceeding rather than hundreds or thousands of individual proceedings. A class action presents far fewer logistical provides and provides the benefits of a single adjudication, including economy of scale and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT ONE: FAILURE TO PAY MINIMUM AND OVERTIME WAGES PURSUANT TO COLORADO WAGE-AND-HOUR LAW
### (On Behalf of Plaintiffs, the Screening Class Members, and the Delivery Driver Class Members)

92. Plaintiffs incorporate all allegations contained in the preceding paragraphs.

93. Plaintiffs bring this claim on behalf of themselves and all Class Members.

94. At all material times, Plaintiffs and the Class Members have been employees of Kroger within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

95. Colorado Wage-and-Hour Law requires employers to pay employees for all time worked. *See* C.R.S. § 8-4-103; C.R.S. § 8-6-106; COMPS Order, Rule 1.9, Rule 3, and Rule 4.

96. Under the COMPS Order, Rule 1.9:

> 1.9 "Time worked" means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so.
>
> 1.9.1 Requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on premises) — including but not limited to putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to

> begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated.
>
> 1.9.2 "Travel time" means time spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked.

97. Under the CWA, employers must pay employees their agreed wage rate, which must be at least the applicable minimum wage, for all hours worked. *See* C.R.S. § 8-4-103; *see also* COMPS Order, Rule 3.

98. The CWA provides that "[a]ny agreement … purporting to waive or modify [an] employee's rights in violation of this article shall be void." *See* C.R.S. § 8-4-121; *Barlow v. Westin DEN Operator, LLC*, No. 1:20-cv-01612-DDD-KLM, 2020 U.S. Dist. LEXIS 259845, at *9-13 (D. Colo. Dec. 2, 2020) (holding that Colorado Wage-and-Hour Law, not the union's collective bargaining agreement, governed minimum wages owed to union employees in Colorado).

99. Under the CMWA, employers must pay employees at least the applicable minimum wage, which in the City and County of Denver must be at least the Denver minimum wage, for all time worked. *See* C.R.S. § 8-6-101; *see also* COMPS Order, Rule 3; *id.* at Rule 3.2 ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); D.R.M.C. § 58-1 *et seq*. (mandating minimum wage for employees who work in the City and County of Denver).

100. The wages due to employees under Colorado Wage-and-Hour Law generally must include overtime compensation at a rate of one and one-half times the employees' regular rate of pay for all hours worked in excess of 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* COMPS Order, Rule 4.

101. Employers who violate the CWA by failing to pay wages earned by an employee, and who continue to violate the CWA by failing to tender such wages within 14 days of receiving a "written demand" are liable for significant civil penalties. *See* C.R.S. § 8-4-109(3).

102. Employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages or compensation. C.R.S. § 8-4-110(b).

103. Employers who violate the CMWA by failing to pay minimum wages and/or overtime compensation for hours worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift are liable for the unpaid minimum wages and/or unpaid overtime compensation, plus reasonable attorney's fees and costs. *See* C.R.S. § 8-6-118.

104. Claims brought pursuant to the CMWA are subject to a three year statute of limitations. C.R.S. § 13-80-103.5.

105. Kroger violated the CWA by failing to pay Plaintiffs and the Class Members their hourly wage rates for all of the time that they worked, and by failing to pay overtime compensation to Plaintiffs and the Class Members at a rate of one and one-half times their regular rates for all of the hours that they worked over 40 hours per workweek, 12 hour per workday, and/or 12 hours per shift. *See* C.R.S. § 8-4-103; COMPS Order, Rules 3 and 4. Kroger also violated the CWA by failing to include all necessary compensation in the calculation of the regular rates of pay for purposes of paying overtime.

106. Kroger knew, or through the exercise of reasonable diligence should have known, that their policies violated Colorado Wage-and-Hour Law and, as a result, Kroger's violations were willful. *See* C.R.S. § 8-4-109(3)(b)(II); *see also* C.R.S. § 8-4-122.

107. Based on its violations of Colorado Wage-and-Hour Law, Kroger is liable to Plaintiffs and the Class Members for unpaid minimum wages, unpaid regular wages, and unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) (if full payment of all wages is not tendered within 14 days of Kroger's receipt of this Complaint), additional penalties under C.R.S. § 8-4-109(3)(b)(II), reasonable attorney's fees, and the costs incurred by Plaintiffs and the Class Members. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110; C.R.S. § 8- 6-118.

**COUNT TWO: FAILURE TO PROVIDE REST BREAKS AS REQUIRED UNDER COLORADO WAGE-AND-HOUR LAW**
**(On Behalf of Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members)**

108. Plaintiffs Curts and Shipman incorporate all allegations contained in the preceding paragraphs.

109. Plaintiffs Curtis and Shipman bring this claim on behalf of themselves and the Delivery Driver Class Members.

110. Under Colorado Wage-and-Hour Law, employers must "authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof." COMPS Order, Rule 5.2.

111. COMPS Order 5.2.4 requires:

> When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

112. Kroger failed to authorize and permit Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members to take a 10-minute rest period when they worked in Colorado.

113. Kroger violated Colorado law by not authorizing or permitting Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members to take a 10-minute rest period for each 4 hours of work.

114. Under Colorado Wage-and-Hour Law, an employee who works during what should be a rest period and is not provided additional pay that unprovided rest period has received less than the legal minimum wage for all hours worked.

115. Thus, these employees are entitled to monetary damages for providing the employer with an equivalent number of minutes of work without additional compensation.

116. Further, under Colorado Wage-and-Hour Law, an employee who is entitled to payment for a missed rest break during a week in which he/she worked more than 40 hours in the week or during a day in which the employee worked more than 12 hours is entitled to payment at the rate of time and one-half their regular rate of pay. Failure to pay these wages for the missed rest break at the overtime rate results in an underpayment overtime. Thus, these employees are entitled to monetary damages for providing the employer with an equivalent number of overtime minutes of work without additional overtime compensation.

117. Kroger knew, or through the exercise of reasonable diligence should have known, that its policy violated Colorado Wage-and-Hour Law and, as a result, Kroger's violations were willful.

118. Therefore, Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members are entitled to ten minutes of wages for each rest period that they failed to receive.

**COUNT THREE: FAILURE TO PROVIDE MEAL BREAKS AS REQUIRED UNDER COLORADO WAGE-AND-HOUR LAW**
**(On Behalf of Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members)**

119. Plaintiffs Curtis and Shipman incorporate all allegations contained in the preceding paragraphs.

120. Plaintiffs Curtis and Shipman bring this claim on behalf of themselves and the Delivery Driver Class Members.

121. Under Colorado Wage-and-Hour Law, employers must provide their employees an uninterrupted, duty-free meal period of at least 30 minutes. Interpretative Notice & Formal Opinion #4.

122. COMPS Order 5.1 requires as follows:

> Meal Periods. Employees shall be entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours. Such meal periods, to the extent practical, shall be at least one hour after the start, and one hour before the end of the shift. Employees must be completely relieved of all duties and permitted to pursue personal activities for a period to qualify as non-work, uncompensated time. When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.

123. For meal periods to be unpaid, non-work time, employees must be completely relieved of all duties, allowed to leave the work site, and allowed to do personal activities.

124. Kroger violated Colorado law by failing to provide a duty free 30 minute meal period to Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members.

125. Kroger also violated Colorado law by failing to allow Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members to do personal activities for a continuous period of 30 minutes.

126. As a result, Kroger owes Plaintiff Curtis, Plaintiff Shipman, and the Delivery Driver Class Members unpaid wages in the amount of 30 minutes that should have been paid each day.

127. Kroger knew, or through the exercise of reasonable diligence should have known, that its policy violated Colorado Wage-and-Hour Law and, as a result, Kroger's violations were willful.

## JURY DEMAND

128. Plaintiffs and the Class Members hereby demand trial by jury on all issues.

## PRAYER

129. For these reasons, Plaintiffs pray that the Court:

a. Certify a class action under Rule 23;

b. Appoint Plaintiffs as representatives of the Rule 23 Classes;

c. Appoint Plaintiffs' counsel as counsel for the Rule 23 Classes;

d. Find Kroger liable for violations of Colorado Wage-and-Hour Law;

e. Award all unpaid minimum wages, unpaid regular wages, unpaid overtime compensation, liquidated damages, penalties, interest, and/or restitution available to Plaintiffs and the Class Members;

f. Award attorneys' fees to Plaintiffs and the Class Members;

g. Award costs of this action to Plaintiffs and the Class Members;

h. Award pre- and post-judgment interest at the highest rates allowed by law; and

i. Order such other and further legal and equitable relief the Court deems just, necessary, and proper.;

j. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Don J. Foty*

Don J. Foty
State Bar No. 24050022
FOTY LAW GROUP
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@fotylawgroup.com

ATTORNEY FOR PLAINTIFFS AND CLASS MEMBERS